**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **IN RE:** | |
| **INNOVATIVE COMMUNICATION CORPORATION,** | **Bankruptcy No. 3:07-30012** |
| | **Adv. No. 3:09-03012** |
| **Debtor.** | |
| **JAMES P. CARROLL, LIQUIDATION TRUSTEE OF THE LIQUIDATION TRUST FOR THE BANKRUPTCY ESTATES OF INNOVATIVE COMMUNICATION COMPANY, LLC, EMERGING COMMUNICATIONS, INC., AND INNOVATIVE COMMUNICATION CORPORATION,** | **Civil No. 2012-70** |
| **Plaintiffs,** | |
| **v.** | |
| **JOHN P. RAYNOR,** | |
| **Defendant.** | |

**ATTORNEYS:**

**Joseph Steinfeld, Jr., Esq.**
Ask Financial, LLP
St. Paul, MN
*For Stan Springel, Chapter 11 Trustee.*

**Benjamin A. Currence, Esq.**
Law Offices of Benjamin A. Currence
St. Thomas, VI
*For James P. Carroll, Liquidation Trustee.*

**John P. Raynor, Esq.**
Raynor, Rensch & Pfeiffer
Omaha, NE
*For John P. Raynor.*

## MEMORANDUM OPINION AND ORDER

**GÓMEZ, C.J.**

Before the Court is the motion of John P. Raynor to withdraw the reference to this Court's Bankruptcy Division in Adversary No. 2009-3012.

## I. FACTUAL AND PROCEDURAL HISTORY

This appeal arises out of the lengthy, and ongoing, bankruptcy of Innovative Communication Corporation ("ICC"), a Virgin Islands telecommunications company, and its former owner and chief executive officer, Jeffrey Prosser.

On July 20, 2009, Stan Springel, Chapter 11 Trustee of ICC's bankruptcy estate, filed a complaint in the Bankruptcy Division against John P. Raynor ("Raynor") to recover pre-petition fraudulent transfers and preferential transfers, Adversary Proceeding No. 2009-3012 (the "Adversary Proceeding"). Springel asserted claims under Sections 544, 547, and 548 of Title 11 of the Bankruptcy Code.

Subsequently, Raynor filed a complaint for declaratory judgment in this Court as to the Adversary Proceeding. That complaint has since been dismissed. Raynor then filed a motion to dismiss the Adversary Proceeding. That motion was denied.

On August 27, 2012, Raynor filed the instant motion to withdraw the reference. Since that time, Springel was

substituted in this action by James P. Carroll. Carroll opposes Raynor's motion to withdraw the reference.

## II. DISCUSSION

Under 28 U.S.C. § 157(d) (2013), the district court is allowed to make a withdrawal of reference to the Bankruptcy Court. That section provides that

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). In interpreting the statute, courts have incorporated a five prong test to determine whether "cause" exists for withdrawal. Factors to consider are: (1) promoting uniformity in bankruptcy, (2) reducing forum-shopping, (3) fostering economical use of debtor resources, (4) expediting the bankruptcy process, and (5) meeting the timing requirement. *In re Pruitt*, 910 F.2d 1160, 1168 (3rd Cir. 1990).

## III. ANALYSIS

Raynor argues that this Court should withdraw the reference because the bankruptcy court lacks subject matter jurisdiction over the Adversary Proceeding pursuant to the Supreme Court's holding in *Stern v. Marshall*, 564 U.S. 2594 (2011).

In the Adversary Proceeding, Springel seeks to recover pre-petition fraudulent transfers and preferential transfers from Raynor.

According to 28 U.S.C.A. § 157

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
>
> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to--
>
> > (A) matters concerning the administration of the estate;
> >
> > (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> >
> > (C) counterclaims by the estate against persons filing claims against the estate;
> >
> > . . .
> >
> > (E) orders to turn over property of the estate;
> >
> > (F) proceedings to determine, avoid, or recover preferences;
> >
> > . . .

> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> . . .
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
>
> . . .
>
> (3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C.A. § 157 (a), (b)(1)-(3).

In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), Vickie Lynn Marshall ("Marshall") brought an adversary proceeding in her Chapter 11 bankruptcy case to recover for her stepson's tortious interference with her expectancy of inheritance or gift from her deceased husband. The bankruptcy court entered judgment for Marshall. The stepson appealed. The district court treated the bankruptcy court's judgment as proposed findings of fact and conclusions of law and adopted them as modified. Both parties appealed. The U.S. Court of Appeals for the Ninth Circuit vacated the district court's judgment. The U.S. Supreme Court granted certiorari.

On appeal, the Supreme Court first considered whether the bankruptcy judge was statutorily authorized to render a final judgment on Marshall's counterclaim. The Supreme Court noted that "[t]he manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern*, 131 S. Ct. at 2603. Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). "Core proceedings include, but are not limited to" sixteen different types of matters enumerated by Title 28, Section 157(b)(2) of the United States Code ("Section 157(b)(2)"). *Id.* at § 157(b)(2). The statute specifically lists as a core proceeding "counterclaims by [a debtor's] estate against persons filing claims against the estate." *Id.* at § 157(b)(2)(C). The Court thus held that Marshall's counterclaim was a "core proceeding" and the bankruptcy judge had the statutory authority to render a final judgment upon it.

The Court then went on to consider whether the exercise of that statutory authority was constitutionally permissible. The Court concluded that Marshall's claim could not be fully adjudicated by the bankruptcy judge. Within the confines of Article III of the Constitution, Congress could only assign to the bankruptcy judges those matters involving "public rights."

These included matters which “can be pursued only by the grace of the other branches,” not matters which “historically could have been determined exclusively by” those other branches. *Stern*, 131 S. Ct. at 2614 (internal quotation marks omitted). Marshall’s “claimed right to relief does not flow from a federal statutory scheme” and neither was it “completely dependent upon adjudication of a claim created by federal law.” *Id.* (internal quotation marks omitted). Rather, Marshall’s “counterclaim—like the fraudulent conveyance claim at issue in *Granfinanciera* — does not fall within any of the varied formulations of the public rights exception in this Court's cases.” *Stern*, 131 S. Ct. at 2614.

The Court also noted that Marshall’s claim was not “limited to a particularized area of the law” in which “Congress devised an ‘expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination by an administrative agency specially assigned to that task.’ ” *Id.* (quoting *Crowell v. Benson*, 285 U.S. 22, 46 (1932)). Instead, the Court concluded that “this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime.” *Stern*, 131

S. Ct. at 2615 (emphasis original). The Court explained in its conclusion that the question before it was “a ‘narrow’ one.” *Stern*, 131 S. Ct. at 2620.

In the present case, then, the Court’s inquiry is also a narrow one. First, the Court must determine whether the fraudulent conveyance action is a core proceeding. If so, the Court must then determine whether fraudulent conveyance actions involve public rights such that they may be constitutionally adjudicated in bankruptcy courts.

***i. Statutory Jurisdiction***

As previously stated, bankruptcy judges may hear and enter final judgments in “all core proceedings arising under title 11, or arising in a case under title 11.” 28 U.S.C. § 157(b)(1). Pursuant to Section 157(b)(2), “core” proceedings include “proceedings to determine, avoid, or recover fraudulent conveyances.” *Id*. at § 157(b)(2)(H). Thus, as a general matter, fraudulent conveyance actions are core proceedings and bankruptcy courts may statutorily enter final judgments in such actions. *See generally Stern*, 131 S. Ct. at 2604-5 (explaining that § 157(b) “permits the bankruptcy court to enter a final judgment” in a proceeding listed under § 157(b)(2) as “core.”).

Raynor does not challenge the statutory authority of bankruptcy courts to enter judgment in such actions. Rather,

Raynor argues that bankruptcy courts are devoid of the *constitutional* capacity to enter final judgments in fraudulent conveyance actions.

***ii. Constitutional Jurisdiction***

Having determined that the bankruptcy court is *statutorily* authorized to enter final judgments in fraudulent conveyance actions, the Court must next determine whether Article III permits Congress to delegate such jurisdiction to bankruptcy courts.

"[I]n general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.' " *Stern*, 131 S. Ct. at 2609 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)). "When a suit is made of 'the stuff of the traditional actions at common law . . . ' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 131 S. Ct. at 2609 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (Rehnquist, J., concurring in judgment)). "At the same time, there are matters, involving public rights, which may be presented in such form that the judicial power is capable of action on them, and which are susceptible of judicial

determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." *Murray's Lessee*, 59 U.S. at 284.

A matter may involve public rights if it "flow[s] from a federal statutory scheme" or is "completely dependent upon adjudication of a claim created by federal law." *Stern*, 131 S. Ct. at 2614. (internal quotation marks omitted). The issue here is whether fraudulent conveyance actions involve public rights such that they may be constitutionally adjudicated in bankruptcy courts.

Prior to its *Stern* decision, the Supreme Court, in *Granfinanciera, S.A. v. Nordberg*, 109 S. Ct. 2782 (1989) had occasion to address that very issue. Indeed, the *Granfinanciera* court explained that

> There can be little doubt that fraudulent conveyance actions by bankruptcy trustees-suits which, we said in *Schoenthal v. Irving Trust Co.*, 287 U.S., at 94-95, 53 S.Ct., at 51 (citation omitted), "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it" - are quintessentially suits at common law that more nearly resemble state - law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res. *See Gibson* 1022-1025. They therefore appear matters of private rather than public right.

*Granfinanciera*, 109 S. Ct. at 2798.

Post-*Stern*, the U.S. Court of Appeals for the Ninth Circuit, in *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012), relied on the *Granfinanciera* and *Stern* decisions in holding that the bankruptcy courts are without constitutional authority to enter final judgment in fraudulent conveyance actions.[1] In *Bellingham*, the bankruptcy trustee filed a fraudulent transfer complaint to recover commissions deposited into the account of a non-creditor as property of the Chapter 7 estate. The bankruptcy court granted summary judgment in favor of the trustee. The non-creditor appealed. The district court affirmed. The non-creditor appealed once again.

On review, the appellate court explained that "*Granfinanciera* clarified that fraudulent conveyance actions are

---

[1] The Sixth Circuit has discussed the issue in dicta, stating that

> Next came *Granfinanciera, S.A. v. Nordberg*, which held that the public-rights doctrine does not allow a bankruptcy court to decide a fraudulent-conveyance claim filed by a bankrupt estate's trustee against a non-creditor. 492 U.S. 33, 55 (1989). By means of such a claim, the estate seeks to recover property that the debtor transferred in anticipation of bankruptcy. Fraudulent-conveyance claims, *Granfinanciera* said, "constitute no part of the proceedings in bankruptcy." *Id*. at 56. They are "quintessentially suits at common law that more nearly resemble state-law contract claims ... to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id*. Thus, only an Article III court can enter final judgment on such a claim. (*Granfinanciera* actually involved the limits of the bankruptcy court's equity jurisdiction for Seventh Amendment purposes, not the limits of the bankruptcy court's authority for purposes of Article III. But the Supreme Court stated that the analysis for each is the same. *See id*. at 53–54.)

*Waldman v. Stone*, 698 F. 3d 910, 918-19 (6th Cir. 2012).

not matters of public right, and that a noncreditor retains a Seventh Amendment right to a jury trial on a bankruptcy trustee's fraudulent conveyance claim.” *Bellingham*, 702 F.3d at 562. The Ninth Circuit concluded that, “[t]aken together, *Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final judgments on fraudulent conveyance claims asserted against noncreditors to the bankruptcy estate. They do not.” *Bellingham*, 702 F.3d at 565. The Court further articulated that

> . . . Article III bars bankruptcy courts from entering final judgments in such actions brought by a noncreditor absent the parties' consent.

*Bellingham*, 702 F.3d at 572.

The *Bellingham* court then turned to the question of “whether bankruptcy judges may constitutionally hear such claims, and prepare recommendations for de novo review by the federal district courts.” *Id*. Relying again on the holding in *Stern*, the *Bellingham* court concluded that “bankruptcy courts have statutory authority to hear and enter proposed findings of fact and conclusions of law in a fraudulent conveyance proceeding asserted by a bankruptcy trustee against a noncreditor, subject to de novo review by a federal district court.” *Id*. at 566.

Here, the complaint in the Adversary Proceeding seeks to recover pre-petition fraudulent and preferential transfers. Such claims are governed by the rule laid out in *Granfinanciera* and clarified in *Bellingham*. They may be finally decided only by the district court, absent waiver or consent of the parties. There has been no such waiver here.

While the bankruptcy judge may not *finally* determine such matters as are presented here, a bankruptcy judge may address pre-trial matters until such time as the matter is trial ready. *See, e.g.*, *In re Palm Beach Finance Partners, L.P.*, 2013 WL 2036161 at *2 (S.D. Fla. May 14, 2013) (analyzing *Stern* and its progeny and concluding that, in a fraudulent conveyance action, "while the Court finds that withdrawal of the reference is appropriate for purposes of conducting the jury trial, at this point in the proceedings, the withdrawal would be premature."); *In re Big V Holding Corp.*, 2002 WL 1482392 (D. Del. July 11, 2002) ("Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'") (citations omitted). Accordingly, the reference will not be withdrawn until such time as the bankruptcy judge determines that this matter is trial ready.

The premises considered, it is hereby

**ORDERED** that Raynor's motion to withdraw the reference of the Adversary Proceeding to the Bankruptcy Division is **DENIED WITHOUT PREJUDICE**; it is further

**ORDERED** that the Bankruptcy Judge shall address all pretrial matters; it is further

**ORDERED** that the Bankruptcy Judge shall certify the underlying proceeding as "trial-ready" when appropriate; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**S_________________________**
**Curtis V. Gómez**
**Chief Judge**